| 25 | 207 |
| 25 | 717 |
| 26 | 375 |
| 25 | 207 |
| 30 | 279 |
| 30 | 636 |
| 25 | 207 |
| 35 | 613 |
| 25 | 207 |
| 44 | 695 |
| 25 | 207 |
| 55 | 140 |
| 25 | 207 |
| 56 | 209 |

MAGGIE C. BLAKELEY, PLAINTIFF IN ERROR, V. THE CHICAGO, KANSAS & NEBRASKA RAILWAY, DEFENDANT IN ERROR.

1. **Railroads**: EMINENT DOMAIN: EVIDENCE. Where persons are shown to be familiar with the value of a particular piece of land, across which a railroad has been built, they may be permitted as witnesses to testify as to the value of such tract immediately before the location of the road, and to the value thereof immediately afterwards.

2. ———: ———: ———. In such case, it is competent for the witness, in estimating the value of such real estate after the location of the road, to take into consideration all elements caused by the construction of the road which would tend to diminish the value of the property.

ERROR to the district court for Thayer county. Tried below before MORRIS, J.

*Griggs & Rinaker* and *C. L. Richards*, for plaintiff in error.

*Manford Savage,* for defendant in error.

REESE, CH. J.

This was an appeal to the district court of Thayer county from an award of damages to real estate resulting from the construction of the railroad of defendant in error over and across such real estate.

The questions presented by plaintiff in error will be considered in their order.

During the trial, Nathan Blakeley was sworn as a witness on the part of the plaintiff in error, and was asked the following questions:

Q. For what purpose was this land adapted prior to the taking of it by the railroad?

A. For agricultural purposes. It was not under cultivation.

Q. It could have been farmed, could it not, throughout?

A. Yes, sir.

Q. What do you consider the fair market value of this tract of land was September 4th, 1886, at the time of its appropriation by the railroad?

A. From $1,000 to $1,200.

Q. What was the fair market value of this tract of land, or that remaining after the railroad right of way was taken, just after its appropriation by the railroad?

To which question the counsel for defendant objected as immaterial, incompetent, and irrelevant, which objection was sustained by the court; to which ruling the plaintiff then and there duly excepted.    *    *    *    *

Q. You are acquainted with the value of real estate, are you not, both before and after the taking of the land for right of way purposes, and know the damage caused by reason of the taking of the land for right of way purposes?

To which counsel for the defendant objected as immaterial, incompetent, and irrelevant, which objection is sustained by the court; to which ruling of the court plaintiff then and there excepted.

Counsel for defense (plaintiff) offered to prove that this witness is competent to testify as to the value of the real estate, before and after the taking of the same for railroad purposes, and is competent in this case, by reason of his experience in such matters, to state the fair market value of this tract of land at the time of the filing of the petition, September 4th, and its fair market value just after the taking by the railroad company, of the tract remaining unappropriated by the railroad, to which the counsel for the defendant objected as immaterial, incompetent, and irrelevant, which objection is sustained by the court, and to which ruling the plaintiffs then and there duly excepted.

James Dinsmore was called as a witness for plaintiff in error, and testified that the fair market value of the forty-acre tract, through which the right of way had been taken, just before its appropriation by the railroad company, was about $20 per acre.    He was then asked:

"Q.    What was the fair market value of the residue of the tract after the railroad had appropriated three and eighty-one-hundredths acres for its right of way?

" Whereupon counsel for defendant objected to the question, for the reason that the question is immaterial, incompetent, and irrelevant, which objection is sustained by the court; to which ruling of the court plaintiff then and there excepted."

The following instruction to the jury was asked by plaintiff, which was refused by the. court, and to which exception was taken:

"The jury are instructed that in this case the plaintiff is entitled to recover:    1st. The fair market value of the land actually taken at the time the same was appropriated for defendant's right of way.    2d.    The damages, if any,

14

to the remainder of the tract not taken, accruing by reason of such taking.    3d.    In case they award to the plaintiff a sum exceeding $150, then they should allow him interest on the whole sum so now awarded him, from the 4th day of September, 1886, at the rate of seven per cent per annum; and the jury are further instructed that the damage done to that part of plaintiff's land which is not taken is to be determined by ascertaining from the evidence the fair market value of such land not taken, immediately before and immediately after the strip was appropriated for the right of way, and the difference between such values, together with the value of the land actually taken, with interest as above specified, is the sum which plaintiff is entitled to recover in this action."

It is contended by counsel for defendant in error, in his brief, that the rules to be adopted in ascertaining damages to real estate should be to show the fair market value of the land at the time of the presentation of the petition for condemnation.    This being shown, and the number of acres taken known, the value of the land actually taken for the right of way is thus determined.    "Having then proven the value of the entire tract before the road was built, the owner of the land may show by a plat (which was done in this case), or otherwise, the direction of the road through his land, the manner in which it is constructed, the depth of the cuts, the height of the fills, and the inconvenient shape in which the remainder of the land is left, whether any portion of the land is rendered inaccessible by reason of the construction of the road, the use to which the land is naturally adapted; in fine, the testimony should make complete word pictures of the land, one showing its condition before the road was constructed, and the other showing it after its construction.    The jury, then, with these facts before them, can say how much the land owner is damaged," etc.

This seems to have been substantially the conclusion of

the trial court, and hence its rulings upon the testimony offered and upon the instruction asked. There are many objections to this method of computing damages, a part only of which we can here notice. It is well known that juries are not selected with any reference to their occupation or experience in connection with the subject-matter of litigation which is liable to be submitted to them. The business of many jurors is such that they would have but little, if any, judgment upon a question of the value of real estate for agricultural purposes, their attention never having been directed in that channel. Many very intelligent men would know but very little, if any, more as to the proper estimate of damages after having heard evidence of the kind referred to than before. The estimation of values has always been considered proper testimony, when given by those competent to testify upon that subject. To render such testimony intelligent, it must be by witnesses having knowledge of the fact. To the mind of the writer it seems very clear that the proper mode of assessing damages is by calling as witnesses those persons who are acquainted with the land and its value. This seems to be conceded by defendant in error, so far as establishing the value of the real estate in the first instance is concerned. We can see no objection to their testifying, if competent to do so, to the value of the remaining real estate after the condemnation, as well as before the right of way has been taken. This is not usurping the province of the jury. It still devolves upon the jury to harmonize the testimony, as far as possible, and in case of conflict to decide as to the weight to be given to the testimony of the various witnesses, and when so done to ascertain by proper computation the amount to which the plaintiff would be entitled.

We think the correct rule, and the one which is now established in this state for proving damages to real estate, is, to estimate the value of the land actually taken. To

this should be added the depreciation in value, if any, of the remainder of the tract or body of land through which the road runs, caused by the taking of the portion for right of way and the construction of the road through the tract. *R. V. R. R. v. Arnold,* 13 Neb., 485. Also see *F., E. & M. V. R. R. Co. v. Marley, ante* p. 138, and *Harrison v. Iowa Midland R. R. Co.,* 36 Iowa, 323; also *N. E. Neb. R. R. Co. v. Frazier, ante* pp. 42, 53.

The question as to the computation of interest being excluded by this instruction is not considered, for the reason that the error was corrected by the district-court in its ruling upon a motion for a new trial.

The court, upon its own motion, gave the jury the following instruction:

"The jury are instructed that in estimating the damages due plaintiff for right of way appropriated by the railroad company, you will not allow anything for the noise and confusion incident to the operation of the trains, nor any damages that may result by reason of the negligence or operation, construction, or management of the road."

This instruction seems to have been copied from the instruction given in *Railroad Company v. Linn,* 15 Neb., 234, and it is insisted by defendant in error that it has been approved by this court in that case. The latter portion of the instruction is correct. The presumption is, that the railroad company will properly and carefully construct and manage its road. Should it fail, and damages be thereby caused, it would doubtless be liable for such damage. It is also true, as we view the law, that it is not the province of the jury to allow anything specially for the noise and confusion incident to the operation of the trains, but it is no doubt true that these are proper elements to be considered by witnesses in estimating the value of real estate after the construction of the road.

o

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

. THE other judges concur.